UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 2 2 2017 ★

BROOKLYN OFFICE

------------------------------------------------------x

ADRIAN SULLIVAN,

                Petitioner,

    -against-

WILLIAM LEE,

                Respondent.

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-CV-425 (CBA)

------------------------------------------------------x

**AMON, United States District Judge:**

Petitioner Adrian Sullivan, proceeding pro se, has petitioned the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Sullivan was convicted, following a jury trial in the Supreme Court of New York, Kings County, of sodomy in the first degree, two counts of sexual abuse in the first degree, and robbery in the third degree. For the reasons stated below, Sullivan's petition is denied.

## BACKGROUND

### I. Incident and Arrest

On February 5, 2001, complainant "ET" was walking home alone when Sullivan pulled up alongside her in a car and attempted to start a conversation. (D.E. # 25 ("Resp. Aff.") at ¶ 4–5.) Sullivan continued to follow complainant as she ignored his advances, but he appeared to drive away once she reached her building. (Id. at ¶ 5–6.) However, after complainant entered the elevator in her building, Sullivan entered the elevator behind her. (Id. at ¶ 6.) Sullivan forced complainant to turn around, upon which he forcibly touched her breasts and genitals and removed $15 from her pocket. (Id. at ¶ 7.) Sullivan held a hard object to complainant's head, threatened to "blast her," and pulled her into a stairwell where he forced her to perform oral sex on him. (Id. at ¶ 8–9.) Sullivan ejaculated in complainant's mouth and in the stairwell, and complainant

1

additionally spit some ejaculate on the floor of the stairwell. (Id. at ¶ 9.) Sullivan then fled the building. (Id.)

Immediately following the assault, complainant's family called the police, who responded to the scene. (Id. at ¶ 9–10.) Crime scene technicians collected samples of the semen found in the stairwell, which were later used to develop a DNA profile that was entered into the DNA Indexing System database. (Id. at ¶ 11.) Complainant described her attacker to police as a dark-skinned male with a West Indian accent, unshaven with thick dreadlocks, approximately five feet six inches to five feet seven inches, weighing between 160 and 165 pounds. (Id. at ¶ 10.)

Two years later, on October 10, 2003, police learned that Sullivan's DNA profile matched the profile generated from the semen samples collected at the crime scene. (Id. at ¶ 12.) On November 25, 2003, complainant identified Sullivan in a line-up. (Id. at ¶ 13.) On April 29, 2004, detectives took another DNA sample from Sullivan, which was a match to the DNA collected from the crime scene. (Id. at ¶ 14.)

## II.  Charges and Pre-Trial Adjournments

Sullivan was charged with two counts of sodomy in the first degree, four counts of sexual abuse in the first degree, one count of robbery in the first degree, one count of robbery in the third degree, one count of grand larceny in the fourth degree, and one count of petit larceny. (Id. at ¶ 15.)

On June 2, 2004, prior to trial, the prosecutor informed the court that Sullivan's DNA matched the semen samples recovered from the crime scene. (Resp. Ex. A., 3/7/05 Tr. at 2:8–13.)[1] Over the course of the following nine months, the trial court adjourned the case numerous times

---

[1] Respondent's Exhibit A contains pre-trial transcripts from March 7, 2005; March 17, 2005; and April 14, 2005 as well as the full trial transcript (excluding voir dire) and sentencing transcript. Respondent's exhibits have been filed in hard copy only due to their sensitive nature, consistent with the Court's Rule 1(F). (See Resp. Aff. at ¶ 52.) As Exhibit A does not contain global pagination, each transcript is cited according to its date and its individual pagination.

to permit the defense time to conduct its own DNA testing. (Id. at 2:8–3:21.) On March 7, 2005, the court granted the defense one more adjournment to March 17, 2005, stating that any DNA results not ready by that date would be precluded from evidence unless the defense provided affidavits to explain the delay. (Id. at 4:18–5:11; 13:20–14:7.) At the hearing on March 17, the defense presented neither DNA results nor affidavits that sufficiently accounted for the continued delay. (3/17/05 Tr. at 2:5–3:22.) The court granted the defense an adjournment to April 14, 2005 and ordered counsel to follow up with the DNA lab and to inform the court if the results would not be available in time. (Id. at 4:2–14; 5:14–6:1.) On April 14, 2005, the defense still did not have the results and requested another continuance. The court denied an additional adjournment and precluded the defense from introducing the results of its testing at trial. (4/14/05 Tr. at 15:18–21.)

At this same hearing, the prosecution informed the court that DNA testing had been performed on the jeans that complainant was wearing at the time of the assault, and that the profile generated matched Sullivan's DNA. (Id. at 5:5–19.) The court stated that the defense was entitled to perform its own DNA testing on the jeans, and that the prosecution would only be permitted to introduce this evidence at trial if it consented to Sullivan's release from jail while the defense conducted its own testing. (Id. at 12:1–13:5.) The prosecution did not consent to Sullivan's release and was precluded from introducing the DNA test performed on the jeans as part of either its direct or rebuttal case. (Id. at 14:17–15:22.)

### III. Trial and Sentencing

At trial, the prosecution called complainant, who testified that Sullivan had followed her into her building and sexually assaulted her in a stairwell after she did not respond to his initial advances on the street. (Trial Tr. at 25:21–124:9.) Beverly Brown, complainant's mother, testified to the broken lock on the front door of the building, which allowed non-residents to enter the

3

building without keys. (Id. at 206:20–207:25.) Brown additionally testified that her daughter entered their apartment screaming immediately following the attack, told her what had happened, and described her attacker. (Id. at 210:4–213:4.)

The prosecution called several police officers and detectives who were involved in the investigation of complainant's assault. Officers Philip Sellitto and Nicholas Coppolla testified to their investigation of the crime scene and interview with the complainant on the night of the attack. (Id. at 220:25–226:24; 247:17–259:22.) Detective Thomas White testified about the evidence collected from the crime scene, including DNA samples from the semen left in the stairwell. (Id. at 312:8–326:13.) Detective Phyllis Johnson-Wright testified to various steps taken in the investigation, including the canvas conducted by police and the fact that she took complainant to see a sketch artist at police headquarters. (Id. at 140:4–19.) Detective Steven Litwin testified about the lineup at which complainant identified Sullivan as her attacker as well as Sullivan's arrest and subsequent DNA swabbing. (Id. at 263:13–278:23.) Noelle Umback, a criminalist with the Office of the Chief Medical Examiner, testified to the testing of the DNA samples taken from the crime scene and their match to swabs taken from Petitioner following his arrest. (Id. at 355:23–386:14.)

The defense called only one witness, Sullivan himself, who testified that he had never approached complainant and that she had misidentified her attacker. (Id. at 418:20–434:24.) On April 29, 2005, the jury found Sullivan guilty of first-degree sodomy, two counts of first-degree sexual abuse, and third-degree robbery. (Id. at 559:20–560:18.) On May 20, 2005, Petitioner was sentenced to twenty-five years on the sodomy count, seven years on each sexual abuse count, and two-and-one-third to seven years on the robbery count, to run consecutively. (Sentencing Tr. 10:3–21.)

4

## IV. Direct Appeal

Sullivan appealed from his judgment of conviction to the Appellate Division, raising the following four claims: (1) the trial court erred in denying the defense an additional adjournment to complete its own DNA testing; (2) the prosecutor improperly bolstered the testimony of witnesses, elicited hearsay testimony, and appealed to the sympathy of the jury during summation; (3) trial counsel was ineffective in failing to preserve claims of prosecutorial misconduct for appeal; and (4) the sentence imposed by the court was excessive. (Resp. Ex. B. ("Pet. App. Br.") at 18–46.)

The Appellate Division affirmed Sullivan's conviction. People v. Sullivan, 863 N.Y.S 2d 381, 381 (App. Div. 2008). The court held that trial counsel was not ineffective for failing to object to the alleged instances of bolstering, certain remarks made by the prosecutor during summation, and the prosecutor's elicitation of hearsay testimony and found that Sullivan's remaining claims were unpreserved for appellate review. Id. The court held that Sullivan's sentence was excessive and directed that the terms of imprisonment run concurrently. Id.

Sullivan moved for leave to appeal to the Court of Appeals, which denied his application. People v. Sullivan, 11 N.Y.3d 901 (2008).

## V. Habeas Corpus Petition and Stay

On January 19, 2010, Sullivan filed a petition for habeas corpus before this Court. (D.E. # 1 ("Pet.").) On February 24, 2010, Sullivan filed a motion to hold his petition in abeyance while he exhausted his unexhausted claims in state court. (D.E. # 2.) On May 14, 2010, the Court granted this motion. (D.E. # 6.)

## VI. Post-Conviction Collateral Relief

On May 28, 2010, Sullivan, proceeding pro se, moved for post-conviction DNA testing of the semen samples recovered from the crime scene and from complainant's jeans, pursuant to New

York Criminal Procedure Law ("C.P.L.") Section 440.30. (D.E. # 15, Ex. 1 ("Pet. § 440 Br.") at

1–27.) Sullivan alleged that such testing had potential to establish his innocence. (Id.)

Simultaneously, Sullivan moved to vacate his conviction pursuant to C.P.L. § 440.10, claiming

that: (1) there was fraud on behalf of the prosecutor; (2) the trial court improperly shifted the

burden of proof in denying the defense an adjournment to perform DNA testing; (3) counsel was

"made ineffective" by the court's denial of an adjournment; and (4) the court erred in failing to

dismiss a juror who revealed bias during voir dire. (Resp. Br. 12; D.E. # 15, Ex. 2 ("Pet. § 440

Aff.") at 1–2.)

The Supreme Court denied the motion for additional DNA testing, holding that there was

no reasonable probability that such testing would establish Sullivan's innocence and that

§ 440.30(1)(a) does not provide for retesting of DNA material. (Resp. Ex. H at 1.) The court also

denied Sullivan's motion to vacate his conviction, holding that the claims asserted were

procedurally barred because he could have raised them as part of his direct appeal but

"unjustifiably" failed to do so.[2] (Id.) Sullivan moved for reconsideration of his motion, which the

court denied. (Resp. Ex. L at 1.) The Appellate Division denied his subsequent motion for leave

to appeal. (Resp. Ex. I.)

## VII. Reopening of Habeas Petition

On November 8, 2012, Sullivan informed the Court that he had exhausted all of his claims

and requested that this habeas proceeding be reopened.[3] (D.E. # 12.) On May 21, 2013, the Court

---

[2] New York Criminal Procedure Law Section 440.10(2)(c) precludes courts from considering post-conviction claims where: "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]" N.Y. Crim. Proc. L. § 440.10(2)(c).

[3] After this Court informed Petitioner that the inconsistent verdict claim raised in his initial petition remained unexhausted, Petitioner withdrew that claim. (See D.E. # 17.)

reopened the habeas proceeding to consider all claims raised and exhausted "either in the initial petition or [Sullivan's] recent state court proceedings." (D.E. # 18 at 2.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013); Lafler v. Cooper, 566 U.S. 156, 172–73 (2012). This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). As the Supreme Court recently stated: "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000); Woods, 135 S. Ct. at 1376. A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a

7

conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. Williams, 529 U.S. at 412–13. The state court decision at issue must be "more than incorrect or erroneous," it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, see 28 U.S.C. § 2254(a), and "does not lie for errors of state law." Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (internal citations and quotations omitted). In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

An application for a writ of habeas corpus on behalf of a person in state custody shall not be granted "unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). "State remedies are deemed exhausted when a petitioner has 'presented the federal constitutional claim asserted in the petition to the highest state court . . . and informed that court (and lower courts) about both the factual and legal bases for the federal claim." See King v. Demarco, No. 11-CV-2000 (JS), 2011 WL 3471548, at *2 (E.D.N.Y. Aug. 3, 2011) (quoting Ramirez v. Att'y Gen. of N.Y., 280 F.3d 87, 94 (2d Cir. 2001)).

## DISCUSSION

### I.  Failure of Trial Court to Grant Adjournment for Additional DNA Testing

Sullivan contends that he was denied the right to a fair trial when the trial court failed to grant the defense an additional adjournment to permit the completion of DNA testing. (Pet. at 4.) This claim is procedurally barred and without merit.

#### A. Procedural Bar

Federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). A state law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state in question." Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) (quoting Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999)).

The Appellate Division rejected this claim on the grounds that it was "unpreserved for appellate review." Sullivan, 863 N.Y.S.2d at 381. Under New York's preservation rule, defense counsel must contemporaneously object to any alleged legal error at a criminal trial in order to preserve the claim for later appeal. See N.Y. Crim. Proc. L. § 470.05(2). The Second Circuit has found New York's contemporaneous objection rule to be firmly established and regularly followed by New York courts. See Garcia, 188 F.3d at 78–79. The Appellate Division's finding is thus an independent and adequate state ground that bars this court from granting habeas relief. Butler v. Cunningham, 313 F. App'x 400, 400 (2d Cir. 2009).

## B. Cause and Prejudice

Although a federal court may review a procedurally barred claim under certain circumstances, Sullivan has not alleged circumstances justifying such review.

A federal court may review a claim that is procedurally barred by an independent and adequate state ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also House v. Bell, 547 U.S. 518, 536 (2006) ("As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error .... The bar is not, however, unqualified . . . . [T]he Court has recognized a miscarriage-of-justice exception.'" (citations omitted)).

Although Sullivan's claim is defaulted because counsel failed to object at trial, default resulting from inadvertence or negligence is not considered "cause" under the *Coleman* framework. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Amadeo v. Zant, 486 U.S. 214, 222 (1988) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). No such external factor is alleged here, nor has Sullivan asserted any actual prejudice. Finally, Sullivan is unable to overcome the default by claiming a fundamental miscarriage of justice because he has failed to put forward any new evidence suggesting that he is innocent of the underlying crimes. See Coleman, 501 U.S. at 748.

In any event, Sullivan's claim is without merit.

## C. Merits

The decision to grant or deny an adjournment or continuance is within the discretion of the trial court. See Avery v. Alabama, 308 U.S. 444, 446 (1940). Such decisions are reviewed for abuse of discretion, and to rise to the level of a constitutional deprivation must amount to "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Morris v. Slappy, 461 U.S. 1, 11–12 (1983) (internal quotation marks omitted).

The trial court's decision not to grant an additional adjournment was well within its discretion. The court adjourned the case numerous times over the course of nine months to permit the defense time to conduct its own DNA testing, and gave the defense multiple opportunities to present affidavits from the DNA testing company to explain the delay. (See 3/7/05 Tr. at 2:8–3:21.) Given this set of circumstances, the Court cannot say that the trial court abused its discretion in failing to grant an additional adjournment.

This claim is therefore denied.

## II. Ineffective Assistance of Counsel

Sullivan claims that he was denied the effective assistance of counsel when trial counsel failed to object to the denial of an additional adjournment. (Pet. at 4.) This claim is procedurally barred and without merit.

### A. Procedural Bar

Sullivan presented this claim to the Supreme Court as part of his combined § 440.10 and § 440.30 motion. (Pet. § 440 Aff. at 1–2.) The court held that the claim was procedurally barred under § 440.10(2)(c), as an appellant cannot use a § 440.10 motion to pursue a record-based claim that could have been included in a direct appeal from the judgment of conviction.[4] (Resp. Ex. H.)

---

[4] Petitioner was assigned new counsel for his direct appeal. (See Pet. App. Br. at 2.)

Criminal Procedure Law § 440.10, under which Sullivan moved to vacate his conviction, provides that the court must deny a motion to vacate a judgment when:

> [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]

N.Y. Crim. Proc. L. § 440.10(2)(c).

Since it was plain from the trial record that counsel failed to object to the denial of an additional adjournment, Sullivan's claim of ineffective assistance is procedurally barred. See Sweet v. Bennett, 353 F.3d 135, 139–40 (2d Cir. 2003); La Touche v. Graham, No. 10-CV-1388 (VB), 2013 WL 5323499, at *12 (S.D.N.Y. Sept. 23, 2013) ("Where a claim is sufficiently based in the record, a state court's reliance on § 440.10(2)(c) constitutes an adequate and independent state law ground that ordinarily precludes a federal court from further habeas review."). Furthermore, he is unable to overcome this procedural default as he has demonstrated neither cause and prejudice nor a fundamental miscarriage of justice.

In any event, this claim is without merit.

### B. Merits

A claim of ineffective assistance of counsel is evaluated under the two-pronged test set out in Strickland v. Washington, 466 U.S. 668 (1984). In order to prove ineffective assistance of counsel, a defendant must show first that counsel's performance "fell below an objective standard of reasonableness" and second that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 688, 693–94. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694.

As discussed above, the trial court's decision not to grant an additional adjournment was well within its discretion, and the court had already adjourned the case numerous times over the course of nine months to permit the defense time to conduct its own DNA testing. (See 3/7/05 Tr. at 2:8–3:21.) Given this, and given the court's clear statement that defense counsel would be given one more chance to provide its own DNA testing results or an explanation for the delay, counsel was not ineffective for failing to object to the final denial. See, e.g., United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) (holding that counsel could not have been ineffective "for failing to make a motion that would have been futile"); Bramble v. Griffin, No. 12-CV-1697 (BMC), 2012 WL 2930146, at *6 (E.D.N.Y. July 18, 2012), aff'd, 543 F. App'x 1 (2d Cir. 2013) ("A defense lawyer need not make futile objections, nor does effective assistance of counsel require objections simply because there is nothing to lose.")

Even if counsel's decision not to object was unreasonable, Sullivan has failed to demonstrate actual prejudice. He has presented no evidence that an objection would have changed the court's decision or that a further adjournment and additional DNA testing would have cast doubt on the prosecution's evidence.

This claim is therefore denied.

### III. Prosecutorial Error

Sullivan claims that he was denied his right to a fair trial and his right to confrontation when the prosecutor used DNA evidence to bolster complainant's identification, elicited hearsay testimony, and made an improper emotional appeal to the jury during summation. (Pet. at 4.) These claims are procedurally barred, as the Appellate Division held that they were unpreserved for appellate review, and Sullivan has not asserted the cause and prejudice or miscarriage of justice necessary to overcome this default. See Sullivan, 863 N.Y.S.2d at 381

In any event, Sullivan's claims of prosecutorial misconduct are without merit.

### A. Bolstering

Petitioner claims that the prosecutor improperly used DNA evidence to bolster the witness's identification of him as her assailant. (Pet at 4.) Offering corroborative evidence does not constitute bolstering. Even if it did, a claim of "bolstering" is not cognizable on habeas review.

Courts in this circuit have repeatedly recognized that "bolstering" is a state law issue that is not cognizable on federal habeas review. See, e.g., Warren v. Conway, No. 07-CV-4117, 2008 WL 4960454, at *21 (E.D.N.Y. Nov. 18, 2008) ("While New York law prohibits bolstering, it is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial." (internal citation and quotation marks omitted)); Fernandez v. Artus, No. 07-CV-2532 (RJS) (AJP), 2009 WL 1586271, at *15 (S.D.N.Y. June 8, 2009) (report and recommendation issued) (allegation of improper bolstering did not establish cognizable claim on habeas review where petitioner claimed that fingerprint evidence improperly bolstered witness identification of petitioner).

Accordingly, this claim is rejected.

### B. Inadmissible Hearsay

"Generally, state court rulings on evidentiary matters are a matter of state law and do not raise constitutional issues . . . [evidentiary] rulings are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness." Warren v. Miller, 78 F. Supp. 2d 120, 135 (E.D.N.Y. 2000) (citing Rosario v. Kuhlman, 839 F.2d 918, 924–25 (2d Cir. 1988)). The Court must first determine whether the state court violated a state evidentiary rule "because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional." Roman v. Fillion, No. 04-CV-8022 (KMW) (AJP), 2005 WL 1383167, at

*26 (S.D.N.Y. June 10, 2005) (report and recommendation issued). A petitioner bringing such a claim bears a heavy burden because "[e]ven an incorrect state court evidentiary ruling does not rise to the level of constitutional error necessary to warrant habeas relief, unless the error deprived Petitioner of a fundamentally fair trial." Alfini v. Lord, 245 F. Supp. 2d 493, 499 (E.D.N.Y. 2003). A petitioner must show that the evidence admitted was "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" Dowling v. United States, 493 U.S. 342, 352 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)).

Sullivan claims that the prosecutor improperly elicited hearsay testimony, namely that: a sketch was generated based on complainant's description of the subject; the police received information from different agencies during the course of the investigation; and complainant had provided a description of Petitioner two years after the assault and subsequently made a pretrial identification. (See Pet. App. Br. at 25–36.) Viewed in the context of the entire trial, this Court cannot say that the evidentiary rulings at issue were incorrect, let alone that the evidence admitted was so prejudicial as to deprive Petitioner of a fundamentally fair trial.

Complainant and Detective Johnson-Wright each made a brief testimonial reference to the fact that complainant assisted the police artist in creating a composite sketch. (Resp. App. Br. at 31–33; Trial Tr. at 60:1–24, 140:17–19.) However, the trial court followed New York state law in denying the prosecutor's request to call the artist for the purpose of admitting the sketch itself.[5] (Trial Tr. at 194:12–197:16; 261:11–262:2.) The sketch itself was never admitted, and as such the

---

[5] New York courts have determined that a composite sketch is admissible only as a prior consistent statement when the testimony of a witness "is assailed as a recent fabrication." People v. Maldonado, 97 N.Y.2d 522, 529 (2002). The trial court here held that the composite sketch was inadmissible, as the defense was showing a prior inconsistent statement and not alleging a recent fabrication. (See Trial Tr. at 261:11–262:2.)

prejudice that courts have been concerned with was not a risk. The brief references to the fact that a sketch was made were simply part of the narrative of how the investigation unfolded.

Such testimony is "properly admitted to complete the narrative" of an investigation. Matos v. Ercole, 08-CV-8814 (LBS), 2010 WL 2720001, at *8 (S.D.N.Y. June 28, 2010) (detective's testimony that he received a picture of the defendant from defendant's brother and then generated a wanted poster "was properly admitted" to explain why detectives began pursuing petitioner); see also Moore v. Ercole, No. 09-CV-1003 (CBA), 2012 WL 407084 at *8 (E.D.N.Y. Feb. 8, 2012) (detective's testimony that police targeted defendant as a result of interviews they conducted was admissible "to provide context for or explain a police investigation"); Newland v. Lape, 05-CV-2686 (JFK), 2008 WL 2485404 at *2, *5 (S.D.N.Y. June 19, 2008) ("[S]tatements admitted merely to complete a narrative or explain the actions of a police officer are admissible.").

Here, complainant's case had been closed for two years. (See Trial Tr. at 264:3–6.) Detective Litwin, who specialized in cases that were reopened due to DNA evidence, explained how the case was reopened, how he came to be on board, and how the investigation proceeded from that point. (Id. at 263:12–264:10.)

Litwin testified to the following: that he was notified of a DNA match in the then-closed case from the Special Victims Unit, the Office of the Chief Medical Examiner ("OCME"), and the New York State Division of Criminal Justice Services; that he subsequently reviewed complainant's case with her, during which conversation she again described her assailant; that a lineup was conducted; and that he took "official police action" after complainant viewed the lineup. (Id. at 263:25–264:16; 264:20–265:11; 269:1–8; 275:20–24; 278:17–23.) All of this testimony was admitted to complete the narrative of the investigation and to explain the actions taken by the police.

Sullivan has not demonstrated that the state court in this case erred in admitting the challenged testimony, let alone that the admissions were "an error of constitutional magnitude." Alfini, 245 F. Supp. at 499. Furthermore, even if any of this testimony was admitted in error, it cannot be said to have prejudiced Sullivan given the overwhelming evidence of guilt present in this case. See, e.g., Thompson v. Artus, No. 10-CV-1443 (CBA), 2013 WL 6408354, at *12 (E.D.N.Y. Dec. 6, 2013) (holding that elicitation of hearsay testimony did not violate due process "given the overwhelming evidence of [petitioner's] guilt").

This claim is therefore denied.

### C. Improper Appeal to the Jury

In order to reach the level of a constitutional violation, a prosecutor's remarks in summation must, "taken in the context of the entire trial, result[ ] in substantial prejudice . . . or so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Flaharty, 295 F.3d 182, 202 (2d Cir. 2002) (internal citation omitted). Although a "prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury," it is "impossible to expect that a criminal trial shall be conducted without some showing of feeling; the stakes are high, and the participants are inevitably charged with emotion." United States v. Young, 470 U.S. 1, fn. 7–8 (1985). Prosecutors may not repeatedly insert prejudicial comments not supported by the evidence. See, e.g., Lee v. Bennett, 927 F. Supp. 97, 105–06 (S.D.N.Y.), aff'd, 104 F.3d 349 (2d Cir. 1996).

Sullivan cites the following remarks as evidence of improper conduct during summation: that complainant "wanted to wash off the filth" of the assault afterward; that complainant "was scar[red]" forever; and that the jury needed to "bring justice" to complainant. (Pet. App. Br. at

37–39; Trial Tr. at 497:9–17, 498:17–21.) Although some of the prosecutor's statements may have been better left unsaid, they do not rise to the level of a constitutional violation.

This claim is therefore denied.

## IV. Failure of the Court to Dismiss an Allegedly Biased Juror

### A. Procedural Bar

Sullivan claims that he was denied a fair trial when the court failed to dismiss an allegedly biased juror. (Pet. § 440.10 Aff. at 1–2.) The state court rejected this claim as procedurally barred under § 440.10(2)(b), as Sullivan could have brought this claim as part of his direct appeal, yet failed to do so. This claim is therefore procedurally barred, and Sullivan has not alleged the facts necessary to overcome the default.

In any event, this claim is without merit.

### B. Merits

The Sixth Amendment to the United States Constitution provides that criminal defendants "shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. Amend. VI. The Supreme Court has repeatedly held that an impartial jury is a "touchstone of a fair trial." McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984). If a defendant is denied an impartial jury, his due process rights and his Sixth Amendment rights have been violated. See Irvin v. Dowd, 366 U.S. 717, 721–23 (1961).

A criminal defendant claiming that biased jurors were seated on his jury has the burden of proving prejudice, namely "the actual existence of such an opinion of the juror as will raise the presumption of partiality." Irvin, 366 U.S. at 723 (internal citation and quotation omitted).

A trial judge's determination of juror impartiality is entitled to a presumption of correctness, and a habeas court may overturn such a determination only for "manifest error." Patton v. Yount, 467 U.S. 1025, 1031 (1984); see also Skilling v. United States, 561 U.S. 358, 386 (2010) (deference due to the trial judge's determinations of partiality "is at its pinnacle"); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 813–814 (2d Cir. 2000) ("The handling of possible juror partiality is entrusted to the sound discretion of the trial court."). A habeas court must determine "whether there is fair support in the record for the state court's conclusion that the jurors [in a trial] would be impartial." Patton, 467 U.S. at 1038.

After his testimony, Detective Litwin notified the court that he had recognized Juror Five as an old friend of his son. (Trial Tr. at 306:7–20.) When questioned by the court, the juror in question explained that he was unaware Litwin was going to testify and that he wasn't sure during the testimony that the witness was in fact his friend's father. (Id. at 306:25–307:13.) He stated that he had known the witness years ago, and hadn't seen the son or spoken to the witness in years. (Id. at 307:14–18.) In response to questioning by the court and by defense counsel, he testified that this prior acquaintance would not affect his view of the case or the witness's credibility. (Id. at 307:19–308:6.)

Given the assurances made by this juror, as well as the tenuous nature of the connection with the witness at issue, there is fair support in the record for the trial court's conclusion that the juror would be impartial.

This claim is therefore denied.

## V. Sufficiency of the Evidence

A petitioner seeking habeas relief from a state conviction based on insufficiency of the evidence "bears a very heavy burden." Einaugler v. Supreme Court of N.Y., 109 F.3d 836, 840

(2d Cir. 1997) (citation and internal quotation marks omitted). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)).

Sullivan claims that newly discovered evidence has come to light that renders the state's evidence at trial insufficient to prove guilt beyond a reasonable doubt. (D.E. # 30 ("Pet. Supp. Compl.") at 1–3.) To support this claim, Sullivan has attached a news article from 2014 reporting on the ruling in People v. Collins, 15 N.Y.S.3d 564 (Sup. Ct. 2015) that OCME's Low Copy Number ("LCN") DNA testing and use of the Forensic Statistical Tool ("FST") do not meet the Frye standard necessary for scientific evidence.[6] (Pet. Supp. Compl., Ex. A.) Petitioner alleges that this ruling necessarily casts doubt on the DNA evidence presented in his case.

The decision in Collins appears to be an "outlier among the forensic DNA software program cases in New York." People v. Bullard-Daniel, 42 N.Y.S.3d 714, 724 (Cty. Ct. 2016). At the time Collins was decided, other trial courts had already ruled that the techniques at issue were generally accepted within the forensic DNA community. Id.; see also People v. Garcia, 963 N.Y.S.2d 517, 523 (Sup. Ct. 2013) (holding that OCME's use of LCN and FST were not novel

---

[6] The Frye test for the admissibility of expert scientific testimony asks whether the accepted techniques, when properly performed, generate results accepted as reliable within the scientific community generally. See Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923). The Supreme Court held that the Frye test was displaced by the Federal Rules of Evidence, see Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993), but it is still followed by New York state court, see People v. Bullard-Daniel, 42 N.Y.S.3d 714, 719 (Cty. Ct. 2016).

techniques requiring a Frye hearing and that both were generally accepted in the scientific community); People v. Megnath, 898 N.Y.S.2d 408, 415 (Sup. Ct. 2010) (same).[7]

The Collins decision has since been criticized by at least two other trial courts. See People v. Carter, 50 Misc.3d 1210(A) (N.Y. Sup. Ct. 2016) (finding "a possible lack of objectivity guiding the testimony of several of the defense experts in Collins" and holding that the Collins court gave insufficient weight to the recommendation of the DNA Subcommittee of the New York State Commission on Forensic Science approving FST); see also Bullard-Daniel, 42 N.Y.S.3d at 724 (noting that the court's role "is simply to determine whether the scientific principles behind [a technique] are accepted generally in the relevant scientific community . . . [it] does not mean that there must be unanimity within the scientific community").

In any event, the decision in Collins does not constitute newly discovered evidence relevant to Sullivan's case. The DNA evidence at issue was available prior to Sullivan's trial, and the defense was granted numerous adjournments to conduct its own testing. Sullivan has not demonstrated that such testing would have resulted in a different outcome, nor that the testing by OCME was so flawed as to cast constitutional doubt on the fairness of the trial or the sufficiency of the prosecution's evidence. Additionally, as noted, the case Sullivan cites is an outlier that has been criticized by other trial courts, while the testing methods at issue have repeatedly been recognized as meeting the Frye standard for admissibility in New York courts.

Furthermore, even if the DNA evidence were to be excluded on this basis, there was sufficient evidence outside of the DNA samples to permit a rational trier of fact to find Sullivan guilty beyond a reasonable doubt. See Policano, 507 F.3d at 115–16.

---

[7] A Frye hearing is necessary only if expert testimony involves "novel or experimental matters." People v. Byrd, 855 N.Y.S.2d 505, 510 (App. Div. 2008). The application of a generally accepted technique does not require a Frye hearing. Id.

This claim is therefore denied.

## VI. Post-Conviction DNA Testing[8]

Finally, Sullivan challenges the state court's denial of his § 440.30 motion for post-conviction DNA testing. (Pet. § 440 Br. at 1–20.) The state court held that there was no reasonable probability that such testing would establish his innocence and that § 440.30(1)(a) does not provide for retesting of DNA material.

The Supreme Court has held that there is no right of post-conviction access to biological evidence for DNA testing. See District Attorney's Office v. Osborne, 557 U.S. 52, 68–70 (2009). A petitioner challenging the denial of post-conviction relief must demonstrate that the state's procedures for such relief "are fundamentally inadequate to vindicate the substantive rights provided." Id. at 69. In order to prove a constitutional violation, a petitioner must show "a substantial probability that the requested testing might have produced exculpatory evidence." Charriez v. Greiner, 265 F.R.D. 70, 88 (E.D.N.Y. 2010).

Sullivan has not met either burden. There is no basis for the Court to question the state court's conclusion that there was no reasonable probability that post-conviction testing would have established Sullivan's innocence.

This claim is therefore denied.

---

[8] It is not entirely clear from Sullivan's additional submissions to the Court whether he is challenging the denial of his motion for post-conviction DNA testing. However, as Petitioner is proceeding pro se, we construe his pleadings liberally. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because Sullivan has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. <u>See</u> 28 U.S.C. § 2253. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: August 22, 2017
      Brooklyn, New York

s/Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge